**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **EYVONNE ARTIS,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **CIVIL NO. JKB-13-2870** |
| | * | |
| **U.S. FOODS SERVICE,** | * | |
| | * | |
| **Defendant** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

This action was brought by Plaintiff Eyvonne Artis ("Plaintiff") against U.S. Foods Service ("Defendant") alleging race and sex discrimination, retaliation, and retaliatory harassment, in violation of Title VII (42 U.S.C. § 2000e, *et seq.*).  (*See* ECF No. 1.)  Now pending before the Court is Defendant's motion for summary judgment.  (ECF No. 18.)  The issues have been briefed (ECF Nos. 18, 23, 27), and no hearing is required, Local Rule 105.6. For the reasons explained below, Defendant's motion for summary judgment is GRANTED.

### A.    BACKGROUND

When considering a motion for summary judgment, the facts and the inferences to be drawn therefrom are taken in the light most favorable to the party opposing the motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).  Plaintiff is pro se, and the Court labored to understand the facts that she proffers through her complaint (ECF No. 1), her extensive deposition testimony (ECF Nos. 18-3, 27-1), and her response in opposition to Defendant's motion (ECF No. 23).  After such review, the facts are as follows:

1

Defendant is a national food distributor with a freight facility in Baltimore, Maryland. Plaintiff is a black woman, and is employed as a "loader" in Defendant's Baltimore facility. As a loader, Plaintiff is responsible for loading and unloading freight from trucks. Plaintiff has been a loader for Defendant since September 2000. The allegedly discriminatory events giving rise to the instant action all took place after 2009.

A large portion of Plaintiff's claims derive from six disciplinary reports that she received between August 2012 and February 2013. Apparently, Plaintiff filed grievances contesting all six disciplinary reports, and all six were subsequently voided and removed from her personnel file. (*See generally* ECF No. 18-1 at 12-13.) Further, Plaintiff was compensated for any days that she had been suspended following this grievance process. (*Id.*) In all instances, Plaintiff alleges that she received discriminatory discipline reports based on gender.

The first disciplinary report was issued on August 14, 2012 by Shift Manager Ken Goins, citing Plaintiff's substandard work. (*See* ECF No. 18-3 at 17-20.)

On August 21, Plaintiff was given a one-day suspension by Supervisor Dave Farmer for improper conduct and for creating a hostile work environment. (*See id.* at 25-35.) The incident began when Plaintiff confronted a male co-worker, Dave Moore, for having left work early during a prior shift. Mr. Farmer overhead the loud argument between Plaintiff and Mr. Moore, and attempted to intervene. Once Mr. Farmer became involved, Mr. Moore accused Plaintiff of taking pictures of freight in violation of company policy. Mr. Farmer questioned Plaintiff about the alleged photographs, and Plaintiff responded by asking "do you see a camera?" before walking away. (*Id.* at 30.)

On December 28, 2012, Plaintiff was given a one-day suspension by Supervisor Robert Jellison for insubordination and failure to follow instructions. (*See id.* at 35-53.) Plaintiff's

proffered facts are difficult to parse.  This incident appears to have started when Plaintiff's supervisor, Ms. Nadine Sullivan, assigned a new freight load to Plaintiff while Plaintiff was still working on a different job.  Plaintiff was upset that the new job was not assigned to a more junior loader, and so she questioned both Ms. Sullivan and Mr. Jellison about the decision. Plaintiff started work on the new assignment, but at some point stepped away to resume work on her earlier job.  When Mr. Jellison discovered that Plaintiff had left her new assignment, he reprimanded Plaintiff and issued a one-day suspension.

In early 2013, Plaintiff received the final three disciplinary reports, all from Mr. Goins and all for substandard work.  (*See id.* at 53-69.)  The first was issued on January 31, 2013, the second on February 6, and the third on February 25.

In addition to these six disciplinary reports, Plaintiff alleges a seniority system that discriminated against Plaintiff because she is a woman.  Male co-workers with more experience than Plaintiff were occasionally released from work early, once their services were not necessary.  (*See id.* at 22.)  In contrast, Plaintiff was required to remain at work until all loaders had finished working.  The seniority system also governed requests for vacation time (*id.* at 107), yet Plaintiff contends that she was regularly denied vacation requests for reasons aside from her relative lack of seniority.

Plaintiff also raises two isolated instances of alleged discrimination.  First, Plaintiff was occasionally required to work by herself when co-workers were unavailable, and her request for assistance was denied by management.  In comparison, a white porter complained about working by herself and Defendant responded by scheduling additional staff for subsequent shifts. Second, Plaintiff argues that she was discriminated against on a particular occasion where, after

moving freight to one location, Mr. Farmer instructed Plaintiff to move the same freight to a new location.  (ECF No. 18-3 at 70-75.)

On December 27, 2012, Plaintiff filed the EEOC charge giving rise to this suit, alleging discrimination and retaliation.[1]  (ECF No. 1-2 at 3-6.)  Plaintiff now alleges that she suffered from unfair discipline and faced harassment by co-workers in retaliation for filing this charge.

Plaintiff received a right to sue letter on June 25, 2013, and filed this suit on September 30, 2013.  (*See* ECF Nos. 1 & 1-2.)  Defendant filed this motion for summary judgment on September 16, 2014.  (ECF No. 18.)  Plaintiff filed her response in opposition on November 14 (ECF No. 23) and Defendant filed its reply on December 8 (ECF No. 27).

### B.    LEGAL STANDARD

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court furnished Plaintiff—a pro se litigant—with "fair notice of the requirements of the summary judgment rule" in the form of a letter, dated September 16, 2014, (*see* ECF No. 19).  The Court informed Plaintiff that Defendant had filed a motion for summary judgment, that judgment could be entered against Plaintiff if the motion were granted, and that Plaintiff had a right to file a response, supported by affidavits and other evidence.  (*Id.*)  "Thus, having received proper *Roseboro* notice, Plaintiff must be held to the normal standards of summary judgment" as described below.  *See Costley v. Shinseki*, 2011 WL 1743244, at *6 (D. Md. May 6, 2011) (citing *Larken v. Perkins*, 22 F. App'x 114, 115 n.* (4th Cir. 2001)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to

---

[1] Plaintiff had filed a prior EEOC charge on May 12, 2010 that gave rise to an unrelated suit before Judge Ellen Hollander.  *See Artis v. U.S. Foodservice, Inc.*, 2014 WL 640848 (D. Md. Feb. 18, 2014).  Judge Hollander granted Defendant's motion for summary judgment and issued judgment for Defendant on February 18, 2014.  *Id.*

current Rule 56(a)).   The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment.  *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).   Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

## C.    ANALYSIS

Plaintiff raises allegations of disparate treatment, retaliation, and retaliatory harassment, all in violation of Title VII.  As a threshold matter, Title VII places a temporal limit on Plaintiff's claims.  Typically, for all Title VII claims, "a plaintiff must file an administrative charge with the EEOC within 180 days of the alleged misconduct."  *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) (citing 42 U.S.C. § 2000e-5(e)(1)).   In this district, however, "a claim initially filed with the EEOC within [a] 300-day limit is considered timely filed under Section 2000e-5(e)(1)."  *Bradley v. Baltimore Police Dept.*, 2012 WL 4321738, at *3 (D. Md. Sept. 19, 2012).  Plaintiff filed the EEOC charge that gives rise to this suit on December 27, 2012, (ECF

No. 1-2 at 3-6), and thus the Court finds that Plaintiff cannot prevail on any alleged discriminatory acts occurring before March 2, 2012—300 days before Plaintiff's EEOC charge. *See Williams*, 370 F.3d at 428 (limiting an employee's Title VII claims to only those events that took place no more than 300 days before an EEOC charge was filed).  With this timeframe, the Court considers Plaintiff's claims of disparate treatment, retaliation, and retaliatory harassment.

### 1.  Disparate Treatment

Plaintiff fails to provide direct evidence of discriminatory animus,[2] and thus must rely on circumstantial evidence through the burden-shifting scheme articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  To survive Defendant's motion for summary judgment, Plaintiff must first make a prima facie case by showing: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment for similarly situated employees outside the protected class.  *See White v. BFI Waste Servs. LLC*, 375 F.3d 288, 295 (4th Cir. 2004).[3]  If Plaintiff establishes her prima facie case, then the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for its action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981).  Once the employer has met that burden of production, the presumption of discrimination under the prima facie case is withdrawn and Plaintiff must prove that the employer's explanation is pretextual.  *Id.* This final

---

[2] Plaintiff did proffer facts during her deposition that she believed qualified as direct evidence of discriminatory animus.  On one occasion, Ms. Sullivan said that "she was going to have a problem with Novella."  (ECF No. 18-3 at 95.)  Novella is black, and Plaintiff interpreted this to be a comment about Novella's race.  (*Id.*)  Ms. Sullivan has also said that she has no "problem with the white race."  (*Id.*)  As a threshold matter, these statements were made before the relevant time period, beginning March 2, 2012.  (*Id.* at 96.)  But even if Plaintiff could show that these statements were not time barred, no reasonable jury could find that either of Ms. Sullivan's statements exhibit direct evidence of discriminatory animus, and so the Court continues its analysis with a review of Plaintiff's circumstantial evidence.
[3] The parties do not dispute Prong #1; Plaintiff is a member of a protected class as a black woman.  Further, for the purposes of this motion, Defendant does not contest Prong #2; Plaintiff need not prove satisfactory job performance to make her prima facie case.  (*See* ECF No. 18-1 at 19 n.12.)

6

inquiry "merges with the ultimate burden of persuading the court that [Plaintiff] has been the victim of intentional discrimination." *Id.* at 256.

Plaintiff makes the following allegations of unlawful disparate treatment: (1) male co-workers were held to a different work standard; (2) male co-workers were afforded benefits according to seniority that were not extended to Plaintiff; (3) on one occasion, a white co-worker was given extra help at the warehouse, while Plaintiff was required to work by herself; and (4) on one occasion, Plaintiff was instructed to unload freight at one particular door, and then was instructed to move the freight to a different door.  The Court considers each allegation in turn.

Plaintiff first argues that she has been held to a different work standard as compared to her male co-workers.  (*See* ECF No. 18-3 at 97-105.)  To support this allegation, Plaintiff refers to the six disciplinary reports that she received since August 2012, citing substandard work performance, insubordination, and the creation of a hostile work environment.  Plaintiff received verbal and written counseling, and also multiple one-day suspensions.  The *McDonnell Douglas* analysis has been adapted for such allegations of discriminatory discipline:  "To establish a prima facie case a plaintiff must show (1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person."  *Lightner v. City of Wilmington*, 545 F.3d 260, 264-65 (4th Cir. 2008) (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)) (internal quotation marks omitted).

In challenging the disciplinary reports citing Plaintiff's substandard work, Plaintiff argues that male co-workers have never been cited for similar reasons.  Plaintiff's contention is improper, however.  Plaintiff relies on nothing more than speculation to support this claim (*see* ECF No. 18-3 at 65), and "[m]ere speculation by the non-movant cannot create a genuine issue

of material fact." *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   Without actual evidence of similarly situated employees who were treated differently, Plaintiff fails to make her prima facie case with regard to disciplinary reports for substandard work.

In challenging those disciplinary reports citing Plaintiff's insubordination or creation of a hostile work environment, Plaintiff refers to two specific instances.   First, Plaintiff refers to an incident on January 31[4] where Mr. Moore refused to follow a direct order from Mr. Goins.   (*See id.* at 93-94.)   After the incident, Mr. Moore apologized to Mr. Goins and faced no discipline. (*Id.*)   In comparison, Plaintiff was suspended on December 28, 2012 when she failed to follow a direct order from Ms. Sullivan and Mr. Jellison.   (*See id.* at 35-53.)   Plaintiff's contention fails to raise a genuine issue of material fact, however.   In this particular instance, Plaintiff and Mr. Moore were not similarly situated because they faced discipline from different decision-makers. The Seventh Circuit's decision in *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992), is instructive. In that case, a black former postal worker—Plaintiff Timms—was denied reinstatement to the Postal Service, while a white former employee was granted reinstatement.   *Id.* at 286-87.   The Seventh Circuit found that the two employees were not similarly situated where, "[m]ost importantly," the two reinstatement decisions were made by different people.   *Id.* at 287.   The court explained that "it is difficult to say that the difference was more likely than not the result of intentional discrimination when two different decision-makers are involved. . . . Reinstatement decisions are discretionary, and under such circumstances utter consistency is difficult."   *Id.*   In an unpublished opinion, the Fourth Circuit articulated a similar concept: "If different decision-makers are involved, employees are generally not similarly situated."   *Forrest v. Transit Mgmt.,*

---

[4] Plaintiff does not specify what year this event took place, noting only that it happened on "January the 31st."   (ECF No. 18-3 at 93.)   The Court assumes, but does not decide, that this occurred in January 2013 around the same time as other relevant incidents in Plaintiff's case.

*Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007).   The Court agrees; disciplinary decisions, like reinstatement decisions, are often discretionary.   Thus, Mr. Moore was not similarly situated to Plaintiff when he was not suspended by Mr. Goins.

Second, Plaintiff refers to the incident from August 21, 2012, discussed in Part A *supra*. To recap, Plaintiff and Mr. Moore were involved in a loud argument when Mr. Farmer— Plaintiff's supervisor—intervened.   Plaintiff received a suspension for insubordination, and Mr. Moore did not.   Defendant has, however, proffered a legitimate, nondiscriminatory reason for such disparate treatment.   (*See* ECF No. 18-1 at 28.)   Plaintiff was accused of taking photographs of freight on the loading docks in violation of company policy.   Moreover, this accusation triggered a secondary argument with Mr. Farmer, which only ended when Plaintiff walked away. Plaintiff testified to this very sequence of events.   (*See* 18-3 at 30.)   Plaintiff fails to show that Defendant's explanation is mere pretext for discriminatory animus.   And no reasonable jury could so find given that Plaintiff was accused of violating company policy and engaged in a heated argument with her supervisor, unlike Mr. Moore.

Beyond these allegations of discriminatory discipline, Plaintiff raises allegations that male co-workers received benefits based on seniority that were unavailable to Plaintiff because of her gender: male co-workers were often allowed to leave work early, or received first priority on vacation time requests.   Defendant offers a legitimate, nondiscriminatory explanation for this disparate treatment.   Critically, nearly all of the male co-workers that Plaintiff refers to had seniority over Plaintiff, and as a result were afforded certain benefits that were withheld intentionally from Plaintiff according to the union's seniority policies.   (*See* ECF No. 18-3 at 22, 107); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 416 (2002) (noting that in most circuits, including the Fourth Circuit, seniority systems constitute legitimate, nondiscriminatory

policies in the context of ADA claims) (citing *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 353-55 (4th Cir. 2001)).

Plaintiff attempts to offer a nuanced counterargument to show pretext. While *male* co-workers with seniority occasionally got released from work before Plaintiff, Plaintiff was never released before her more junior co-workers. Even assuming that Plaintiff's proffered facts are true, the Court finds that this does not show that Defendant's explanation is pretext for discrimination. Instead, Plaintiff merely contends that she did not receive those benefits that employees with more seniority were afforded. Plaintiff fails to proffer instances where male employees junior to Plaintiff, or male employees with the same experience as Plaintiff, were released from work while Plaintiff was required to stay. Without such comparators, the Court finds no evidence to support a finding that Defendant's legitimate, nondiscriminatory explanation for disparate treatment is mere pretext for a discriminatory animus.

On the issue of vacation time, Plaintiff proffers one instance in 2010 where a male employee, junior to Plaintiff, was granted vacation time that had previously been denied to Plaintiff. (*See* ECF No. 18-3 at 108.) Putting all other considerations aside, this testimony would raise a genuine issue of material fact. However, Plaintiff's allegation is time barred, having occurred well before the relevant timeframe beginning on March 2, 2012. Aside from this solitary incident, Plaintiff fails to proffer any other examples of similarly situated employees with less or similar experience being granted vacation time while Plaintiff's requests were denied.

Plaintiff also argues that she was discriminated against based on race when she was required to work by herself. To support this contention, Plaintiff attempts to identify a similarly situated white employee, Ms. Lenora Candia, who was treated differently. On one occasion

where Ms. Candia was scheduled to work alone, she complained to management and was given extra help during subsequent shifts.  In contrast, Plaintiff also complained to management after being scheduled to work alone, but management allegedly did not offer additional staffing.  Ms. Candia is not a similarly situated employee, however.  "The similarity between comparators . . . must be clearly established in order to be meaningful."  *Lightner*, 545 F.3d at 265.  Ms. Candia *did* work in the same warehouse, but she was a porter rather than a loader, and consequently she was a member of a different union with different policies.  (*See* ECF No. 18-3 at 84-85.)  These distinctions alone defeat Plaintiff's prima facie case.  No reasonable jury could find that Ms. Candia was similarly situated to Plaintiff.

Finally, Plaintiff contends that she was discriminated against when she was instructed to move freight from one loading door to another. (*See* ECF No. 18-3 at 70-75.)  Plaintiff fails to proffer any similarly situated employees who were treated differently, and thus no reasonable jury could find that these facts raise an inference of discrimination.

For these reasons, and taking the facts in the light most favorable to Plaintiff, the Court holds that there are no genuine issues of material fact with regard to Plaintiff's disparate treatment allegations, and that no reasonable jury could find that Plaintiff was discriminated against because of her race or gender.  Thus, the Court will issue judgment for Defendant on these claims of disparate treatment.

### 2.  Retaliation

Plaintiff alleges that she faced retaliatory reprimands in response to filing EEOC charges. (*See* ECF No. 18-3 at 203, 326.)  To satisfy Plaintiff's burden to make a prima facie retaliation claim, Plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action."

*Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Claims of retaliation are governed by the same proof schemes applicable to Title VII discrimination claims, discussed *supra*, except that proof of retaliation requires but-for causation. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013) (clarifying that Title VII does not permit retaliation claims to be proved based on any showing other than but-for causation).

Thus, the Court applies the same *McDonnell Douglas* burden shifting methodology: first Plaintiff may establish a prima facie case by proving the three elements of retaliation. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). If Plaintiff is able to make a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If Defendant satisfies this requirement, the burden shifts back to Plaintiff to prove, by a preponderance of the evidence, that the employer's stated reasons were not its true reasons, but were in fact a pretext for retaliation. *Id.*

Plaintiff makes a prima facie showing on some, but not all, of her allegations. Plaintiff engaged in protected activities when she filed EEOC charges on May 12, 2010[5] and December 27, 2012. And Plaintiff sufficiently alleges that Defendant acted adversely against her. Assuming *arguendo* that Defendant's actions were retaliatory, "a reasonable employee would have found the challenged action[s]"—six disciplinary reports—"materially adverse," meaning "it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006).

Plaintiff's retaliation claim begins to falter on the causation element of her prima facie case. Plaintiff's first EEOC charge from May 2010 was filed over two years before the earliest disciplinary report, issued on August 14, 2012. Plaintiff's protected activity is far too attenuated

---

[5] *See supra* note 1.

from the adverse employment action to qualify as a but-for cause. "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *see also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between [an EEOC] charge and [an adverse employment action] is too long to establish causation absent other evidence of retaliation."). Plaintiff fails to provide other evidence of retaliation, aside from the alleged proximity between her EEOC charges and subsequent disciplinary reports. Thus the Court now narrows its review to those actions taken in response to Plaintiff's second EEOC charge, filed on December 27, 2012.

The first two disciplinary reports, both from August 2012, were issued *before* Plaintiff filed her December 2012 EEOC charge. Thus, Plaintiff cannot support a claim that either of these disciplinary reports were unlawfully retaliatory.

Plaintiff makes her requisite prima facie showing that the four remaining disciplinary reports, issued after December 27, 2012, were in retaliation for Plaintiff's EEOC charge. Defendant, however, satisfies its burden of production by producing legitimate, non-retaliatory reasons for each of the disciplinary reports. (*See generally* ECF No. 18-1 at 28-29.) Each report identified a "Nature of Violation," and was supplemented with "Supervisor's remarks." (*See* ECF No. 18-3 at 152, 154, 156, 158, 160, 162.) These records provide a persuasive non-retaliatory reason for every reprimand. Further, Plaintiff had received similar reprimands for similar behavior *prior to* filing her second EEOC charge. The disciplinary reports from August 2012, citing Plaintiff's substandard work and creation of a hostile work environment, undermine Plaintiff's contention that she was reprimanded in retaliation for filing her EEOC charge.

For these reasons, the burden shifts back to Plaintiff to show that Defendant's stated explanations are mere pretext for retaliation. The Court conducted a comprehensive review of Plaintiff's proffered facts, and now holds that no reasonable jury could find that Plaintiff's filing of her EEOC charge was the but-for cause of Defendant's four disciplinary reports against Plaintiff. Thus, the Court will issue judgment for Defendant on this claim of retaliation.

### 3. Retaliatory Harassment

Plaintiff also claims retaliatory harassment, alleging that she was subjected to a hostile work environment after filing her EEOC charges. (*See* ECF No. 18-3 at 130-35.) A claim for retaliatory harassment—a hostile work environment claim based on retaliation under Title VII—requires that a plaintiff show "(1) [s]he experienced unwelcome harassment; (2) the harassment was in retaliation for protected conduct; (3) the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and to create an abusive atmosphere; and (4) there is some basis of imposing liability on the employer." *Wells v. Gates*, 336 F. App'x 378, 387 (4th Cir. 2009) (citing *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006)); *see also Kearns v. Northrop Grumman Sys. Corp.*, 2014 WL 2170781, at *15-16 (D. Md. 2014) (applying the test articulated in *Wells*, 336 Fed. App'x at 387). Similar to a claim for unlawful retaliation, Plaintiff must show that any alleged harassment was *in retaliation for* protected conduct, which requires but-for causation. *See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005) (requiring but-for causation in the context of a retaliation claim); *see also Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007) (requiring but-for causation in the context of a discriminatory harassment claim).

Plaintiff proffers that she was subjected to harassment by her co-workers after filing her EEOC charge. Specifically, co-workers would tell supervisors that Plaintiff failed to perform

assigned work, and co-workers would take credit for work Plaintiff had performed. Plaintiff's claim fails, however, because she cannot show that her protected activity—filing an EEOC charge—was the but-for cause of the alleged harassment.

During her deposition, Plaintiff conceded that these problems started when she switched to the day shift (ECF No. 18-3 at 133), *not* after she filed her EEOC charge. In fact, Plaintiff moved to the day shift in approximately March 2012 (*id.* at 9), nine months before she filed the EEOC charge in question. Further, Plaintiff testified that her problems really began when new management came to the company, and in particular she had "no problem until really, truthfully, . . . when Miss Sullivan came to the company to work." (ECF No. 18-3 at 133-34.) Plaintiff has introduced alternative causes for the alleged harassment, namely Plaintiff's switch to the day shift and the introduction of new management, neither of which have anything to do with Plaintiff filing her EEOC charge. Taking the facts in the light most favorable to Plaintiff, no reasonable jury could find that Plaintiff would not have experienced harassment, but for the fact that she filed an EEOC charge. Thus, the Court will issue judgment for Defendant on Plaintiff's claim for retaliatory harassment.

### 4. New Allegations Raised in Plaintiff's Response in Opposition

Plaintiff's response in opposition to Defendant's motion for summary judgment (ECF No. 23) fails to cite any legal authority. But it is rife with new factual allegations of disparate treatment and retaliatory harassment. The Fourth Circuit has long held "that a party cannot create a triable issue in opposition to summary judgment simply by contradicting [her] deposition testimony with a subsequent affidavit." *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999). Plaintiff testified that she had identified all instances of discriminatory behavior in her complaint and through her deposition testimony. (*See* ECF No.

18-3 at 203, 369-70.)  Plaintiff's response brief directly contradicts this testimony, introducing previously unmentioned instances of alleged discrimination, raised only after discovery had been closed.  Such allegations are expressly barred.

Regardless, even if the Court were to consider Plaintiff's new allegations, they would fail for the same reasons discussed *supra*.  On all claims, Plaintiff either fails to proffer facts concerning similarly situated employees, or fails to rebut Defendant's legitimate, nondiscriminatory and non-retaliatory reasons for alleged adverse acts.

### 5.  Summary

Plaintiff has proffered facts that depict troubling experiences, though the exact causes and contours of this work environment are unclear.  Indeed, workplaces often present difficult circumstances.  But Plaintiff has failed to show that she has been subjected to any acts *based on* her race or gender, or that she has been retaliated against for filing a charge with the EEOC.  For these reasons, the Court finds that there are no genuine issues of material fact on Plaintiff's claims, and that no reasonable jury could find in favor of Plaintiff.

### D.   CONCLUSION

Accordingly, an order shall issue GRANTING Defendant's motion for summary judgment (ECF No. 18).

DATED this 2nd day of April, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge